UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------X
DOREEN DEL MONACO DOYLE,

                     Plaintiff,

       -against-              **MEMORANDUM AND ORDER**
                                    12-CV-0032 (KAM)(RER)

UNITED AIRLINES, INC.,

                     Defendant.
---------------------------X

**MATSUMOTO, United States District Judge:**

        On March 13, 2012, plaintiff Doreen Del Monaco Doyle ("plaintiff") filed the instant Second Amended Complaint against United Airlines, Inc. ("defendant") alleging that (1) defendant discriminated against her in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, by denying her light duty or a reduced work schedule that would accommodate her disability of short-term memory and coordination issues after brain surgery for a tumor, and (2) defendant breached its employment agreement with plaintiff by failing to provide plaintiff with light duty work after extended medical leave to facilitate her transition to her pre-leave duties.  On both claims, plaintiff seeks damages for lost wages, emotional distress, mental anguish, and physical harm.  On April 12, 2012, defendant served a motion to dismiss the Second Amended Complaint for failure to state a cause of action.  Plaintiff opposed the motion on May 3, 2012,

and defendant submitted a reply in support of its motion on May 10, 2012.  For the reasons that follow, defendant's motion to dismiss the Second Amended Complaint is granted with prejudice, because any amendments by plaintiff would be futile.

**BACKGROUND**

**A.   Factual Allegations in the Second Amended Complaint**

According to the Second Amended Complaint, plaintiff was a customer service representative employed by defendant from November 1985 until April 2008.  (ECF No. 9, Second Amended Complaint, filed March 13, 2012 ("S. Am. Compl.") ¶¶ 3, 7.)  In 2005, plaintiff was diagnosed with a brain tumor while hospitalized for severe headaches and confusion.  (*Id.* ¶ 4.) Plaintiff underwent surgery to remove the brain tumor and began rehabilitation.  (*Id.*)  During this time, plaintiff commenced an unpaid medical leave of absence in accordance with her employment agreement, which provided for up to three years of unpaid leave when medically necessary.  (*Id.* ¶ 6.)

In February 2008, within three years of taking medical leave, plaintiff advised her supervisor, Rande Reed, that she planned to return to work.  (*Id.*)  Specifically, Plaintiff asked for a period of light duty or reduced schedule work before returning to her former position to accommodate her disability, which included short-term memory and motor coordination issues. (*Id.*)  Reed told plaintiff that, because defendant did not offer

light duty accommodations, plaintiff must either return directly to her former position prior to the expiration of her extended leave or resign. (*Id.*) Plaintiff then requested a brief period of clerical work prior to returning to her former position, but Reed again denied her request. (*Id.*) In April 2008, defendant sent plaintiff a separation letter stating that plaintiff was deemed to have resigned for failure to return to work within three years after taking medical leave. (*Id.* ¶ 7.)

According to her Second Amended Complaint, in late 2010, plaintiff learned from both current and former employees of defendant that defendant did indeed have a policy of accommodating employees returning from extended medical leave with light duty work. (*Id.* ¶ 8.) Moreover, this policy was in place at the time plaintiff sought to return to work on a light duty basis. (*Id.*) Plaintiff alleges that defendant discriminated against her on the basis of her disability by refusing to accommodate her need for light duty work upon her return to employment. (*Id.* ¶ 9.)

B.   **Factual Allegations from Plaintiff's Affidavit in Opposition to Defendant's Motion to Dismiss**[1]

Plaintiff also alleges that a union agreement, or Collective Bargaining Agreement ("CBA"),[2] was in place between plaintiff's union and defendant before plaintiff took a leave of absence and at the time of her termination.  (*See* Pl. Aff. at ¶¶

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), the court is "normally required to look only to the allegations on the face of the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), and "[c]ourts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss," *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-23 (S.D.N.Y. 2010).  In this case, however, plaintiff seeks leave to amend the Second Amended Complaint to include the allegations presented in her Affidavit in Opposition to the instant motion (ECF No. 17-2, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Opp."), at 7-8; ECF No. 17-1, Affidavit of Doreen Del Monaco Doyle dated 4/27/12 ("Pl. Aff.")), a request which defendant opposes (ECF No. 16, Defendant's Reply Memorandum ("Reply"), at 1-2).  The court need not resolve that dispute because, as explained *infra*, plaintiff's claims still fail as a matter of law even when considering the additional allegations in her Affidavit as her proposed amendments to a proposed Third Amended Complaint and, hence, defendant's motion must be granted with prejudice.  *See, e.g., Candelaria v. Spurlock*, No. 08 Civ. 1830, 2008 WL 2640471, at *5 (E.D.N.Y. July 3, 2008) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).  The court thus treats the additional allegations set forth in plaintiff's Affidavit as formal amendments to the Second Amended Complaint for purposes of deciding this motion.

[2] Defendant attached a copy of the CBA to its motion to dismiss.  (*See* ECF No. 15, Galligan Decl., Ex. B, 2005-2009 Agreement between Defendant and Union ("CBA").)  The court has considered the CBA on the instant motion because plaintiff's proposed amendments to the Second Amended Complaint in her Affidavit include allegations that explicitly reference the union, the union agreement, and the CBA.  (*See* Pl. Aff. ¶¶ 7-8.)  The CBA is, therefore, incorporated by reference into plaintiff's Second Amended Complaint, as amended by her Affidavit dated 4/27/12, or is at least a document plaintiff had knowledge of and relied upon in bringing this suit.  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (on motion to dismiss "consideration is limited to the factual allegations in [the] complaint," "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," or documents either in "plaintiff['s] possession or of which plaintiff[] had knowledge and relied in bringing suit"); *see also Zambrano v. USA Waste of N.Y. City, Inc.*, No. 00-Civ-7990, 2001 WL 80080, at *1 n.1 (S.D.N.Y. Jan. 31, 2001) ("The Court considers the collective bargaining agreement as having been incorporated in the complaint by reference in view of the complaint's references to the 'union agreements' and the union's alleged breaches of its obligations thereunder.").

7-8.)  Specifically, the International Association of Machinists
and Aerospace Workers (the "union") became the sole and
exclusive bargaining agent for defendant's customer service
representatives, including plaintiff, on July 12, 1998 (*see* CBA,
at Preamble & Article II.A), and a CBA covered plaintiff's
employment in 2008, when she was terminated (*see* Pl. Aff. ¶ 8).
Plaintiff was aware that there was a union in place when she
began her extended medical leave, "although there was no union
at the time [she] began [her] employment" with defendant.  (Pl.
Aff. ¶ 7.)

Plaintiff further alleges that she did not know
whether the CBA provided her with any recourse at the time of
her termination in April 2008, or "what impact the presence of
the union would have on [her] situation."  (*Id.* ¶ 7.)  Plaintiff
did, however, contact at least two union representatives, Bill
Imbember and Rose Cohen, seeking their assistance in resolving
her employment dispute around the time she was terminated in
April 2008.  (*Id.*)  According to plaintiff, these union
representatives advised plaintiff "that the union could not and
would not help [her]; that [she] had no rights to what [she]
wanted, [she] had no rights under the union agreement; and [she]
could not utilize the union's grievance procedure to make any
claim."  (*Id.*)  As a result, plaintiff believed in 2008 that she
"had no claim that could be pursued in any forum, including any

5

procedure under the 2005-2009 Collective Bargaining Agreement between" defendant and the union. (*Id*. ¶ 8.)  In fact, plaintiff alleges that never before this lawsuit has anyone "suggested" that she should have utilized the union's claim and appeal procedures. (*Id*.)  To plaintiff, "the union and its agreement with [defendant] never existed and were never a factor." (*Id*.)  Thus, having relied to her detriment on the union representatives' statements to her that she had no recourse, plaintiff alleges that she should not now be penalized for having accepted the union's false representations. (*Id*.)

Plaintiff's Second Amended Complaint and the allegations in her Affidavit allege two claims arising from defendant's conduct. (S. Am. Compl. ¶¶ 10-18; *see generally* Pl. Aff.)  First, plaintiff claims that defendant violated the Rehabilitation Act by discriminating against her on the basis of her disability. (S. Am. Compl. ¶ 11.)  Second, plaintiff claims that defendant breached its employment agreement by failing to provide plaintiff with light duty work after medical leave to facilitate her transition to her original position. (S. Am. Compl. ¶¶ 13-15.)  On plaintiff's claims against defendant, plaintiff seeks damages in excess of $100,000 for lost wages, emotional distress, mental anguish, and physical harm. (S. Am. Compl. ¶¶ 11, 18.)

## C. Procedural Background

On April 12, 2012, defendant moved to dismiss the Second Amended Complaint for failure to state a cause of action, pursuant to Rule 12(b)(6), and filed a memorandum of law in support of its motion and a Declaration with supporting documents including the Second Amended Complaint and excerpts from the 2005-2009 CBA.  (ECF No. 13, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Mot."); ECF No. 14, Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("Mem."); ECF No. 15, Declaration of Paul Galligan ("Galligan Decl.").)  On May 3, 2012, plaintiff submitted a memorandum in opposition (Opp.) and an Affidavit in Opposition to defendant's motion to dismiss (Pl. Aff.).  In her opposition memorandum, plaintiff asks for leave to file an amended complaint if the court grants defendant's motion in order to include the allegations set forth in plaintiff's Affidavit in opposition to defendant's motion. (Opp. at 7-8.)  Defendant submitted a reply in support of its motion on May 10, 2012, arguing both that the court should not grant plaintiff leave to amend but, if it does, that plaintiff's amended claims would still fail to state a claim under Rule 12(b)(6).  (Reply.)

### 1. Rehabilitation Act Claim

With respect to plaintiff's first cause of action, the Rehabilitation Act claim pursuant to Section 504, 29 U.S.C. § 794(a), defendant argues in its motion that plaintiff's first claim is time-barred in the Second Circuit, where a three-year statute of limitations is applied to Rehabilitation Act claims. (Mem. at 5-6 (citing *Solomon v. N.Y. City Bd. of Educ.*, No. 95-CV-1878, 1996 WL 118541, at *4 (E.D.N.Y. Mar. 6, 1996); *Bates v. L.I.R.R.*, 997 F.2d 1028, 1037 (2d Cir. 1993).) Thus, according to defendant, plaintiff's Rehabilitation Act claim is time-barred because she filed it on or about December 9, 2011, more than three years after she was terminated by defendant in or around April 2008. (*Id.* at 5-6.)

Plaintiff responds to defendant's statute of limitations argument by suggesting that the court apply New York State's six-year statute of limitations for a breach of contract action to plaintiff's Rehabilitation Act claims, instead of the three-year limitation defendant contends is appropriate. (Opp. at 3-4.) Plaintiff argues that the Rehabilitation Act itself does not specify a statute of limitations period, and because the heart of her claim is that defendant violated the Rehabilitation Act by breaching its "express contractual obligation" to plaintiff by refusing to allow her to return to work on light duty, the six-year limitations period applicable

to general contract actions should apply here.  (*Id.* at 4.)
Plaintiff further argues that if the court does apply the three-
year limitations period to her Rehabilitation Act claim, the
court should deem the limitations period equitably tolled based
on the erroneous advice given to plaintiff by her union
representatives that plaintiff had no forum in which to pursue
her claim.  (*Id.* at 5 (citing *Johnson v. Al Tech Specialties
Steel Corp.*, 731 F.2d 143 (2d Cir. 1984).)

          Defendant's reply in support of its motion contends,
however, that plaintiff has not demonstrated the extraordinary
circumstances required to warrant equitable tolling of the
three-year limitations period.  (Reply at 3-5.)  Even if the
court were to view the erroneous advice plaintiff received from
her union representatives in 2008 as grounds for equitable
tolling, defendant contends that plaintiff would not be able to
show that she filed her action with "'due diligence by bringing
[her] claim within a reasonable time after the facts giving rise
to the estoppel have ceased to be operational.'"  (*Id.* at 5
(quoting *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir.
1995)).)  Specifically, defendant points out that plaintiff has
not explained the approximately year-long delay between
allegedly discovering at the end of 2010 that she could pursue
her contract-based claim for a light-duty work assignment and
her filing of this action in December 2011.  (*Id.*)

## 2.   Breach of Contract Claim

Defendant argues that plaintiff's second cause of action, the common law breach of contract claim, is preempted by the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA § 301"). (Mem. at 6.) LMRA § 301 provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. 185(a).

Defendant contends that the CBA, which was in effect when plaintiff went on extended medical leave in 2005 and also when plaintiff was terminated in 2008, sets forth the only applicable terms and conditions of plaintiff's employment with defendant. (Mem. at 3-4, 6-7.) Among other things, the CBA provides for extended medical leave for up to three years for union members and a mechanism to extend such leave beyond three years in certain circumstances. (*Id*. at 4; *see also* CBA at Article XV.) The CBA also states that an employee receiving a separation notice may, within 10 days of separation, file a grievance protesting his or her separation and the union may appeal the separation "directly to Step Three of the grievance procedure," which grievance procedure is contained in the CBA and provides for arbitration under the System Board of Adjustment. (Mem. at 4; *see also* CBA, Articles XV and XVIII.)

Thus, defendant insists, plaintiff's claim relating to
defendant's alleged breach of their employment contract is
"inextricably intertwined" with the CBA, rendering it preempted
by the LMRA.  (Mem. at 6 (citing *Allis-Chalmers Corp. v. Lueck*,
471 U.S. 202, 221 (1985) (holding that LMRA § 301 completely
preempts a state-law contract claim where "resolution of a
state-law claim is substantially dependent upon analysis of the
terms of an agreement made between the parties in a labor
contract, that claim must either be treated as a § 301 claim, or
dismissed as pre-empted by federal labor-contract law")
(citations omitted).)  According to defendant, the effect of
LMRA preemption is that plaintiff cannot bring her contract-
based claim in this court before exhausting the CBA's grievance
and arbitration procedures.  (*Id*. at 7-8 (citing *DelCostello v.
Int'l Bhd. of Teamsters*, 462 U.S 151, 163 (1983) (employee must
"attempt to exhaust grievance or arbitration remedies provided
in the collective bargaining agreement").)

Defendant argues in the alternative that if the court
chooses to construe plaintiff's breach of contract claim as a
"hybrid" LMRA § 301 claim, the court should still dismiss it for
failure to comply with the six-month statute of limitations
applicable to such claims.  (*Id*. at 8-9.)  Specifically,
although an employee bringing an LMRA § 301 claim may avoid the
above-mentioned exhaustion requirement by framing her claim as a

11

"hybrid" action against both the employer (for breach of the collective bargaining agreement) and the union (for breaching its duty of fair representation), these "hybrid" claims are subject to a six-month statute of limitations.  (*Id.* (citing *Brannon v. Tarlov*, 986 F. Supp. 146, 151 (E.D.N.Y. 1997); *DelCostello*, 462 U.S. at 172; LMRA § 10(b)).)  Defendant thus contends that, in this case, plaintiff's hybrid LMRA § 301 claim would be time-barred because it was filed in December 2010, more than six months after her alleged request for representation in challenging her termination was refused by the union in 2008.  (*See id.* at 8-9.)

Plaintiff's opposition to defendant's motion to dismiss her breach of contract claim contends that the LMRA does not preempt her claims for two reasons.  First, based on her union representatives' statements to her that she had "no rights under the union contract," plaintiff claims that she could not utilize the union's grievance procedure and that she had "no rights in any forum" and, thus, plaintiff's "situation was handled as if there was no collective bargaining agreement in place and no grievance procedure available."  (Opp. at 6.)  Plaintiff argues that her situation is analogous to those in which operational collective bargaining agreements have expired or were invalid and the Second Circuit permitted the employee plaintiffs to avoid arbitration thereunder.  (*Id.* (citing *Globe*

12

*Seaways, Inc. v. Nat'l Marine Engineers' Beneficial Ass'n*, 451 F.2d 1159, 1163 (2d Cir. 1971); *Proctor & Gamble Ind. Union of Port Ivory v. Proctor & Gamble Mfg. Co.*, 312 F.2d 181, 186 (2d Cir. 1962)).)

Secondly, plaintiff argues that her attempts in 2008 to speak to her union representatives regarding her separation notice were, in fact, attempts to exhaust the CBA's grievance and arbitration procedures. (Opp. at 7.) Therefore, according to plaintiff, her breach of contract claim should not be preempted by the LMRA's exhaustion requirement, because she did attempt to exhaust those routes "but her attempt was denied by the union, whose representatives said she had no rights in any forum, including the union." (*Id.*)[3]

---

[3] Plaintiff does not directly respond to defendant's arguments that plaintiff's breach of contract claim is a "hybrid" LMRA § 301 claim, nor does she explicitly state whether or not she intends to allege such a claim in this case. (*See generally* Opp.) She does, however, cite to the union's failure to inform her of rights under the CBA as the reason she was unable to exhaust the CBA's grievance and arbitration procedures. (*See, e.g.*, Opp. at 5, 8-11.) Thus, as discussed *infra* Section II.B, the court will analyze these allegations as a hybrid LMRA § 301 claim because plaintiff can avoid LMRA § 301's exhaustion requirement only by relying on the union's alleged failure to fairly represent her – the classic elements of a hybrid LMRA § 301 claim. *See White v. White Rose Food, a Div. of DiGiorgio Corp.*, 128 F.3d 110, 113 (2d Cir. 1997) (hybrid LMRA § 301 claims require both "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer").

**DISCUSSION**

I.   **Legal Standards**

   A.   **Motion to Dismiss Pursuant to Rule 12(b)(6)**

       Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a plaintiff's failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Thus, in order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing plausibility on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, *Iqbal*, 556 U.S. at 664, and afford the plaintiff every reasonable inference, *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir. 2009). However, allegations must consist of more than mere labels, legal conclusions, or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681 (internal quotation marks and citations omitted).

       The facial plausibility standard is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 678. This does not require a
showing of a "probability" of misconduct, but it does demand
more than "a sheer possibility that a defendant has acted
unlawfully." *See id.* Thus, "where the well-pleaded facts do
not permit the court to infer more than the mere possibility of
misconduct," dismissal is appropriate. *Starr v. Sony BMG Music
Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Iqbal*, 556
U.S. at 679); *see also Twombly*, 550 U.S. at 570 (noting that
where "plaintiffs . . . have not nudged their claims across the
line from conceivable to plausible, their complaint must be
dismissed"). Indeed, "however true," if the allegations in a
complaint "could not raise a claim of entitlement to relief,
this basic deficiency should . . . be exposed at the point of
minimum expenditure of time and money by the parties and the
court." *Twombly*, 550 U.S. at 558 (internal quotation marks and
citations omitted).

**B. Leave to Amend Pursuant to Rule 15(a)(2)**

The Supreme Court, interpreting Federal Rule of Civil
Procedure 15(a)(2), has stated that "[i]n the absence of any
apparent or declared reason - such as undue delay, bad faith or
dilatory motive on the part of the movant, repeated failure to
cure deficiencies by amendments previously allowed, undue
prejudice to the opposing party by virtue of allowance of the
amendment, futility of amendment, etc. - the leave should, as

the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (stating that leave to amend "should generally be denied" when one of the enumerated *Foman* reasons is present) (per curiam).

In determining whether the claim in a proposed amended complaint will be futile, "the court must take the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Gallegos v. Brandeis School*, 189 F.R.D. 256, 258 (E.D.N.Y. 1999).  If this assessment results in the conclusion that the proposed amendment must fail as a matter of law, the amendment would be futile, and leave to amend is properly denied." *Id*. (citing *Foman*, 371 U.S. at 182 and *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).

Leave to amend is futile if the amended complaint "would be subject to dismissal for failure to state a complaint upon which relief may be granted" and therefore could not survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Candelaria*, 2008 WL 2640471, at *5 (citing *Milanese*, 244 F.3d at, 110).  However, "even where the possibility of relief is remote, amendment must be permitted because it is the possibility of recovery, not its likelihood, that guides the court's analysis." *Gallegos*, 189 F.R.D. at 259 (citing *Vermont Plastics, Inc. v. Brine, Inc.*, 79 F.3d 272, 278 (2d Cir. 1996)).

Nonetheless, the Second Circuit has observed that it is not an abuse of the trial court's discretion to "'deny[] leave to amend a complaint which even as amended would fail to state a cause of action.'"  *Silverman v. City of New York*, No. 98-cv-6277, 2001 WL 1776157, at *2 (E.D.N.Y. Nov. 19, 2001) (quoting *S.S. Silverblatt, Inc. v. East Harlem Pilot Block Bldg. 1 Hous. Dev. Fund Co., Inc.*, 608 F.2d 28, 42 (2d Cir. 1979)).

## DISCUSSION

## I.  Plaintiff's Rehabilitation Act Claim is Time-Barred

As noted previously, defendant argues that plaintiff's Rehabilitation Act claim is time-barred for failure to file within the three-year statute of limitations period for claims under Rehabilitation Act § 504, which prohibits discrimination against persons with disabilities.  (Mem. at 5-6.)  Plaintiff responds that her Rehabilitation Act claim is not time-barred because the statute does not specify a statute of limitations period and asks the court to apply New York's six-year statute of limitations for breach of contract.  (Opp. at 3-4.)

Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with handicaps . . . shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. §

794(a) (1988).[4]  No limitation of time is set forth in the Act for actions brought pursuant to § 504.  The Second Circuit has held, however, "that actions under § 504 of the Rehabilitation Act are governed by the state statute of limitations applicable to personal injury actions." *Morse v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992).  In New York, the state statute of limitations applicable to personal injury actions is three years.  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).  Consequently, the Second Circuit's holding in Morse forecloses plaintiff's argument that the six-year statute of limitations for breach of contract should apply to her Rehabilitation Act claim.  *See Morse*, 973 F.2d at 124-27.  The court thus applies the prescribed three-year statute of limitations period to plaintiff's Rehabilitation Act claim, and because plaintiff's complaint in this action was filed outside that period, the Rehabilitation Act claim is time-barred.[5]

---

[4] Although the issue was not briefed by the parties and the pleadings are somewhat unclear, the court assumes for purposes of this motion that the venue for plaintiff's Rehabilitation Act claim is proper in this district, where the court assumes the claim arose, and where plaintiff alleges defendant does business (S. Am. Compl. ¶ 2).  *See Paul v. Shinseki*, No. 09-CV-1591, 2010 WL 3927077, at *5 (E.D.N.Y. Sept. 29, 2010) ("A specific statutory provision, 42 U.S.C. § 20003-5(f) (3), which is codified in Title VII and incorporated by the Rehabilitation Act, governs venue for claims under both Title VII and the Rehabilitation Act.") (citing *Bolar v. Frank*, 938 F.2d 377, 378 (2d Cir. 1991)).

[5] Additionally, although the court finds that plaintiff's Rehabilitation Act claim must be dismissed for untimeliness, plaintiff's allegations in her Second Amended Complaint and her Affidavit do not set forth all the elements of a meritorious Rehabilitation Act claim.  To establish a prima facie violation of § 504, a plaintiff must prove: (1) she is an individual with a disability within the meaning of the Rehabilitation Act; (2) she is

A.      **Equitable Tolling Does Not Apply to Plaintiff's Rehabilitation Act Claim**

In the alternative, plaintiff asks the court to equitably toll the three-year statute of limitations period for Rehabilitation Act § 504 claims because her union representatives allegedly incorrectly advised her that she had no legal recourse.  (Opp. at 4.)  Defendant responds that plaintiff's equitable tolling argument is meritless because, *inter alia*, the alleged circumstances are not sufficiently "extraordinary" and plaintiff did not act with due diligence in filing her claim because she waited approximately one year after she discovered the prospect of a remedy.  (Reply at 3-5.)

In the Second Circuit, equitable tolling is applied only in "rare and exceptional circumstances." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005).  To qualify for equitable tolling, the party seeking tolling "must establish that 'extraordinary circumstances prevented him from filing his petition on time,' and that he 'acted with reasonable diligence throughout the period he seeks to toll.'" *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).  "[T]he due diligence requirement

---

"otherwise qualified" to perform the job in question; (3) she was excluded from the job solely because of her disability; and (4) the employer receives federal funding.  *See, e.g.*, *Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir. 1990).  Here, however, neither the Second Amended Complaint nor plaintiff's Affidavit including her proposed additional facts contain any specific allegations as to plaintiff's disability within the meaning of the Act, or her "qualifi[cations] to perform the job in question."

[is] a two-phase inquiry concerned with both the period of discovering [the cause of action] and the period between such discovery and filing the [complaint]." *Rashid v. Mukasey*, 533 F.3d 127, 132 (2d Cir. 2008). Moreover, "the part[y] seeking such tolling bear[s] the burden of proving that [she was] in fact diligent." *Cekic v. I.N.S.*, 435 F.3d 167, 171 (2d Cir. 2006); *see also Semper v. N.Y. Methodist Hosp.*, 786 F. Supp. 2d 566, 577-78 (E.D.N.Y. 2011) ("'[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect.'") (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Here, assuming for purposes of this motion that plaintiff's allegations regarding the union's misrepresentations to her about the unavailability of remedies constitute extraordinary circumstances to warrant equitable tolling, plaintiff cannot demonstrate that she acted with due diligence in pursuing a remedy between the time she discovered, "[t]oward the end of 2010," that defendant did have a policy permitting light-duty work after medical leave and the time she filed this suit, in December 2011. (*See* S. Am. Compl. ¶ 8.) In fact, plaintiff offers no explanation whatsoever for waiting approximately one year to file her complaint after learning that a remedy might exist. (*See generally* S. Am. Compl.; Opp.; Pl. Aff.) This is simply not enough to fulfill plaintiff's burden

to allege facts indicating that she acted with due diligence during the entire time period she seeks to toll. *See, e.g., Semper*, 786 F. Supp. 2d at 577-78 (refusing to equitably toll 300-day limitation in which to file EEOC charge because plaintiff had not shown due diligence for entire tolling period, where plaintiff alleged that her failure to timely file action was caused by miscommunication between her and her attorney); *see also Al Tech Specialties Steel Corp*., 731 F.2d at 147 (holding, in the context of the 90-day period during which a plaintiff must commence an action after receiving a right-to-sue letter, that "in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day") (citation omitted). Accordingly, even accepting as true the additional facts set forth in plaintiff's Affidavit regarding the alleged misrepresentations by her union representatives, equitable tolling does not apply to defeat defendant's motion to dismiss plaintiff's Rehabilitation Act claim. Defendant's motion to dismiss plaintiff's Rehabilitation Act claim is, therefore, granted with prejudice.

**II. Plaintiff's Breach of Contract Claim is Preempted or Time-Barred**

**A. LMRA § 301 Preempts Plaintiff's Breach of Contract Claim**

As discussed earlier, defendant first argues in support of its motion that LMRA § 301 preempts plaintiff's

21

breach of contract claim under state law because the claim is "substantially dependent" or "inextricably intertwined" with the CBA.  (Mem. at 6-8.)  Defendant contends that plaintiff's claim must be dismissed under LMRA § 301 for failure to exhaust the required grievance and appeal procedures, because LMRA § 301 requires employees to first exhaust the grievance and appeal procedures of their collective bargaining agreements before suing their employers in federal court.  (*See id*. at 7-8.)

Plaintiff responds that LMRA § 301 should not preempt her state-law breach of contract claim because her attempts in 2008 to speak to her union representatives regarding her separation notice were, in fact, attempts to exhaust the CBA's grievance and arbitration procedures.  (Opp. at 6-7.) Therefore, according to plaintiff, her breach of contract claim should not be preempted by the LMRA's exhaustion requirement, because she did attempt to exhaust those routes "but her attempt was denied by the union, whose representatives said she had no rights in any forum, including the union."  (*Id*. at 7.)  Thus, plaintiff argues, it was "as if there was no collective bargaining agreement in place and no grievance procedure available."  (*Id*. at 6.)

Section 301 of the LMRA provides that:

Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought

> in any district court of the United States
> having jurisdiction of the parties, without
> respect to the amount in controversy or
> without regard to the citizenship of the
> parties.

29 U.S.C. § 185(a).  The Supreme Court has construed LMRA § 301 as "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp.*, 471 U.S. at 209.  Thus, "when a state claim alleges a violation of a labor contract, the Supreme Court has held that such claim is preempted by [LMRA § 301] and must instead be resolved by reference to federal law." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003); *see also Allis-Chalmers Corp.*, 471 U.S. at 210 (stating that LMRA § 301 preemption applies "when resolution of a state-law claim is substantially dependent upon analysis of [a collective bargaining] agreement").  The "unusual pre-emptive power" accorded LMRA § 301 extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim.  *Livadas v. Bradshaw*, 512 U.S. 107, 122 n.16 (1994).

Nevertheless, "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124.  Instead, to determine whether a state law claim is preempted because it requires

interpretation of a collective bargaining agreement, the court must analyze whether the "'legal character' of the state law claim is truly independent of the rights conferred under the collective bargaining agreement." *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 153-54 (S.D.N.Y. 2006).

Plaintiff frames her claim as a breach of an individual employment agreement as of the time of her hiring and before the union represented her.  Yet, the alleged contractual breach she complains of occurred at the time she was terminated in or around April 2008, when the 2005-2009 CBA defined her contractual rights with respect to her employer.  Plaintiff concedes that she was a member of the union and that the CBA controlled her employment relationship with defendant, both at the time she began her medical leave in 2005, and was later terminated in April 2008.  (*See* Pl. Aff. ¶¶ 7-8.)  With respect to her cause of action for common law breach of contract, plaintiff does not allege that a state statute or any other source of employment rights conferred upon her the right to return to defendant's employment on a light-duty assignment after her medical leave.  (*See* S. Am. Compl. ¶¶ 12-18.)  To the contrary, plaintiff alleges that, pursuant to an agreement with defendant, the promise of light-duty work following medical leave was made to her by defendant in the context of their pre-union employment relationship.  Plaintiff does not identify the

24

agreement, the parties, the date, or the location at which this purported agreement was made. (*See* S. Am. Compl. ¶¶ 6, 15; Pl. Aff. ¶ 6.)  In any event, as the Preamble to the CBA provides, any employment agreements prior to the CBA were subsumed in July 1998, when the union was certified as the representative of plaintiff's craft or class and the CBA was negotiated between the union and defendant.  (CBA, at Preamble.)

Furthermore, the CBA explicitly provides for the relief plaintiff believes she was entitled to: the CBA provides for extended medical leave for up to three years for union members and a mechanism to extend such leave beyond three years in certain circumstances, and states that an employee receiving a separation notice may, within 10 days of separation, file a grievance protesting his or her separation and the union may appeal the separation "directly to Step Three of the grievance procedure," which itself is contained in the CBA and provides for arbitration under the System Board of Adjustment.  (CBA, Articles XV and XVIII.)

Where, as here, a plaintiff has not identified any source of her claimed contract rights other than a collective bargaining agreement, plaintiff's claims must be construed as preempted by LMRA § 301.  *See, e.g., Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62-63 (2d Cir. 2010) (affirming district court's dismissal of plaintiff's breach of contract claim as

preempted under LMRA § 301 where there was no other source of plaintiff's rights aside from the collective bargaining agreement in effect between the parties at the time of alleged breach); *see also Salamea,* 426 F. Supp. 2d at 154-55 (finding plaintiff's claim under New York State Labor Law against employer for failure to pay wages for accrued vacation days was preempted under LMRA § 301 where the operative collective bargaining agreement "contains detailed requirements for an employee to be eligible for vacation benefits").

Nonetheless, although the court finds that plaintiff's breach of contract claim is preempted by LMRA § 301, the inquiry does not end there, because, as set forth below, a plaintiff may still pursue claims that are otherwise preempted by the LMRA if she can set forth sufficient facts to allege a so-called "hybrid" LMRA § 301 claim.  In this case, however, for the reasons explained below, plaintiff's putative hybrid LMRA § 301 claim would still be dismissed because it fails to satisfy the applicable statute of limitations.

**B.  Plaintiff's Hybrid LMRA § 301 Claim is Time-Barred**

Defendant also argues that plaintiff's LMRA § 301 claim can only be brought as a hybrid LMRA § 301 claim because plaintiff failed to exhaust the grievance procedures available under the CBA.  (Mem. at 8.)  Consequently, defendant insists, plaintiff's claim must be dismissed for failure to comply with

the six-month statute of limitations for hybrid LMRA § 301 claims. (*Id.* at 9.)

As noted earlier, plaintiff's allegations are somewhat unclear with respect to whether she intends to state a hybrid LMRA § 301 claim. According to plaintiff, her breach of contract claim should not be preempted by the LMRA's exhaustion requirement, because she did attempt to exhaust "but her attempt was denied by the union, whose representatives said she had no rights in any forum, including the union." (Opp. at 6-7.) As such, because plaintiff alleges that her inability to exhaust the CBA's grievance and arbitration procedures was caused by the union representatives' alleged misrepresentations to plaintiff regarding her available remedies, plaintiff's breach of contract cause of action presents a classic hybrid LMRA § 301 claim. *See, e.g., White Rose Food*, 128 F.3d at 113.

In general, before an employee may sue her employer[6] for breaching a CBA, that "employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello*, 462 U.S. at 164. Even if plaintiff failed to exhaust the CBA's grievance

---

[6] Contrary to defendant's suggestion (*see* Reply at 7), there is no requirement that an employee sue both her employer and her union in order to state a viable hybrid LMRA § 301 claim. *White Rose Food*, 128 F.3d at 116 (noting that plaintiffs suing their employers under a hybrid LMRA § 301 theory need not sue their union at all).

procedures, however, "a wrongfully discharged employee may bring an action against [her] employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967); *see also DeFrancesco v. Bottalico*, No. 10-cv-8193, 2011 WL 6382610, at *5 (S.D.N.Y. Dec. 16, 2011) (noting, in context of motion for judgment on the pleadings, that an employee subject to a CBA alleging wrongful discharge is "normally bound by the result of the CBA-governed grievance procedure, even if a meritorious grievance was lost because of poor judgment on the part of the union officials who handled the grievance.  The principal exception to this rule arises where an employee can prove that the grievance was lost because, in handling the grievance, the union breached its duty of fair representation") (citing *Vaca*, 386 U.S. at 184-86).

To properly plead such a claim, the employee must allege both "(1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation in redressing her grievance against the employer." *White Rose Food*, 128 F.3d at 113 (citing *DelCostello*, 462 U.S. at 163-64).  "The limitations period on this 'hybrid § 301/DFR' action is six months, which begins to

run when the employee knew or should have known of the breach of the duty of fair representation." *Id.* at 113 (quoting *DelCostello*, 462 U.S. at 169).

As noted above, plaintiff seeks to avoid LMRA § 301 preemption of her breach of contract claim by arguing that she did not have fair access to the CBA's grievance procedures due to the union's alleged failure to fairly represent her and inform her of her available remedial procedures. Yet, even if plaintiff substantively states a valid cause of action against defendant based on the union's alleged misrepresentations to plaintiff, her claim must nevertheless be dismissed as time-barred.

Here, plaintiff concedes that "toward the end of 2010" she learned from other current and former employees of defendant that the light-duty work she sought for herself was indeed available to defendant's employees back in 2008. (S. Am. Compl. ¶ 8.) Plaintiff thus had reason to know, at least by "the end of 2010," that the union had potentially breached its duty of fair representation to her when, in 2008, the union representatives allegedly told her she had no recourse in any forum. (*See id.*) Plaintiff did not file the instant action until December 2011, approximately one year after she learned of a potential remedy. Where, as may be the case here, a plaintiff alleging a hybrid LMRA § 301 claim has not set forth any viable

equitable reason for tolling a statute of limitations, courts in this circuit have dismissed such claims for untimeliness. *See, e.g., Carrion v. Enter. Ass'n*, 96-CV-5959, 1999 WL 294721, at *2-3 (E.D.N.Y. Mar. 5, 1999) (dismissing hybrid LMRA § 301 claim for failure to comply with six-month statute of limitations where plaintiff was told by union they could not help him obtain reinstatement, contemplated taking legal action, but failed to file claim within limitations period), *aff'd sub nom. Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29 (2d Cir. 2000); *see also Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995) ("Once a plaintiff learns of his union's breach of its duty of fair representation, the union's subsequent failure to actually represent the plaintiffs cannot be treated as a continuing violation that preclude[s] the running of the limitations period.") (internal quotation marks and citation omitted)).  As such, plaintiff's putative hybrid LMRA § 301 claim is untimely and is dismissed with prejudice.

**CONCLUSION**

For the reasons set forth above, defendant's motion to dismiss this action is granted, with prejudice, and plaintiff's embedded motion to amend the Second Amended Complaint is denied as moot.  The Clerk of the Court is respectfully requested to close this case and enter judgment in favor of defendant.

**SO ORDERED.**

Dated: Brooklyn, New York
       December 20, 2012


___/s/_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York